Argued November 24, 1969, affirmed January 8, petition
for rehearing denied January 27, 1970. Petition
for review denied by Supreme Court
March 17, 1970

## STATE OF OREGON, *Respondent, v.*
## FRED VICTOR EVANS,
### *Appellant.*

463 P. 2d 378

*Howard R. Lonergan,* Portland, argued the cause and filed the briefs for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Roger Rook, District Attorney, Oregon City.

FORT, J.

The defendant was convicted of the crime of illegal possession of marihuana. ORS 474.020. In appealing he sets forth three assignments of error. We consider them seriatim following a brief summary of the facts.

The police received information from an informer indicating that marihuana was present at the defendant's premises. Accordingly a search warrant was sought based upon an affidavit by a police officer which states in its pertinent portions:

"I have been informed by an informant whose information has proved reliable in the past that the informant purchased a quantity of a substance purporting to be marijuana from one Victor Evans at 577—4th Street, Lake Oswego, Clackamas County, State of Oregon, where the said Victor Evans resides. At the time he made this purchase

and within the past week the informant observed a large quantity of the same substance in the house and garage at the above address. The informant has delivered the substance purchased from Mr. Evans to me."

It then recites the officer's special training in the identification of marihuana and flatly asserts the substance given him by the informant is marihuana.

Based on the affidavit a search warrant was issued. At the time of the search defendant was not at home. His wife and small child were.

The search revealed substantial quantities of marihuana. Mrs. Evans thereupon was arrested for illegal possession of narcotics. While the officers were at the home, the defendant telephoned his wife. At his request she called one of the officers to the phone. The defendant identified himself to the officer. Following the call, one of the officers left, picked up the defendant and returned to the residence with him.

Subsequently defendant and his wife were taken to the police station. While there, defendant, in the presence of his wife and after receiving full warning of his rights, voluntarily made an oral statement to the police. This was promptly reduced to writing but defendant, though not denying its accuracy, declined to sign it.

In due course defendant filed a motion to suppress the seized marihuana. At the hearing he sought to elicit the name of the "reliable informant" described in the affidavit. The state objected and the court sustained it. This ruling is challenged by the first assignment of error.

■■ It is well established that the state has a privilege to withhold the identity of a person who furnishes

information concerning law violations to appropriate law enforcement officers. This is commonly known as the "informer's privilege." *Roviaro v. United States,* 353 US 53, 77 S Ct 623, 1 L Ed 2d 639 (1957). In that case the court said:

"* * * The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." 353 US at 59.

The privilege, however, is not absolute. For example,

"* * * Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful * * * to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. * * *" 353 US at 60-61.

More recently, *McCray v. Illinois,* 386 US 300, 87 S Ct 1056, 18 L Ed 2d 62 (1967), reviewed *Roviaro* at length and stated:

"What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake. Indeed, we have repeatedly made clear that federal officers need *not* disclose an informer's identity in applying for an arrest or search warrant. As was said in *United States v. Ventresca,* 380 U. S. 102, 108, we have

'recognized that "an. affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant," so long as the magistrate is "informed of some of the underlying circumstances" supporting the affiant's conclusions and his belief that any informant involved *"whose identity need not be disclosed . . .* was 'credible' or his information 'reliable.'" \* \* \*'" 386 US at 311.

We note that here the question arises in connection with the issue of probable cause. Our Supreme Court recently stated in *State v. Cortman,* 251 Or 566, 446 P2d 681 (1968), cert den 394 US 951 (1969):

"\* \* \* [W]here the identity of the informer can be relevant only on the issue of probable cause and the record reveals adequate proof of probable cause without the informer's identity, the defendant has no right to insist upon disclosure. [Citation omitted.]" 251 Or at 572.

Here the identity of the informer had no connection with the establishment of the guilt or innocence of the defendant. The ruling was correct.

■ Defendant next claims that the affidavit contained no facts establishing the reliability of the informant. We disagree. Here the informant is alleged not only to have personally observed marihuana on the premises in question "within the past week" and to have purchased some of it there from this defendant, but also the affiant then states he personally received thereafter that very marihuana from the informer, and, based upon his own expertise and training in the identification of narcotic drugs, the affiant himself determined that it was in fact marihuana.

It is obvious that this affidavit did set forth sufficient of the underlying circumstances "necessary to

enable the magistrate independently to judge the validity of the informant's conclusion that the narcotics were where he said they were" as required by *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964); *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969). This assignment is without merit.

■ Finally, the defendant contends that his oral admission and the exhibit embodying it were inadmissible because it was coerced, and hence involuntary.

The coercion alleged is that if he would make the admissions, then the charges against his wife would be dropped.

The police officer with whom the defendant first, at his own request, talked on the phone testified that consistently from the very first he told Mr. Evans he could make no deal at all concerning his wife. The defendant, during the motion to suppress, himself testified:

"Q Now, when you spoke first to Captain Dahlquist on the telephone about a deal, what did he tell you about that?

"A He just said that he couldn't make any deals, that it was out of his hands, that it wasn't up to him.

"Q Did he tell you anything further than that?

"A No."

Later at the police station, by his own request, in the presence of his wife, the defendant, after being fully advised of his rights, did make a statement to that same police officer. These were embodied in the exhibit.

Because a defendant is motivated to make a state-

ment against his interest does not establish that it has been coerced, or that it is otherwise inadmissible. Any of a myriad of reasons may validly cause him to do so. Similarly, because a defendant chooses to make a statement in the hope or belief that it will exculpate or gain leniency for his wife or anyone else does not render it inadmissible. It is only where there is coercion imposed upon the defendant by the authorities that there is ground for its exclusion.

The trial court found beyond a reasonable doubt that the statement was freely and voluntarily made after full warning of his constitutional rights. The defendant himself testified during the motion to suppress that the exhibit set forth fully and correctly what he in fact had said and what had been said to him. The finding is amply supported by the evidence. The exhibit was properly received.

The judgment is affirmed.