Argued August 23, reversed and remanded September 21, petition
for rehearing denied October 11, petition for review
allowed December 5, 1972
(See later issue Oregon Reports)

## STATE EX REL KERNS, *Respondent, v.*
## READ, *Appellant.*

501 P2d 82

*Jesse R. Himmelsbach, Jr.,* District Attorney, Baker, argued the cause and filed the brief for appellant.

*Ken C. Hadley,* Baker, argued the cause for respondent. On the brief was Ralph G. Monson, Baker.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

SCHWAB, C. J.

This is an appeal by the Chief of Police of the city of Baker from an order finding him in direct contempt, ORS 33.030, for refusing to answer a question, ORS 33.010 (1)(j), about the identity of an informant during a hearing on a motion to suppress in

the case of *State v. Kerns* (Baker County Crim Case
No. 1083).

One Leland Kerns had been indicted for pos-
session of marihuana. He moved to suppress the
marihuana that was the basis of this charge on the
grounds that the warrantless search of his car by Chief
Read and two other officers was illegal. At the sup-
pression hearing Chief Read testified that just before
4:20 or 4:30 p.m., November 4, 1971, an informant told
him there was marihuana in the glove compartment of
a certain vehicle that subsequently proved to belong
to Kerns. Chief Read ordered Officer Nebeker to
place the vehicle, which was then parked in Baker,
under surveillance. Some time later that evening Kerns
entered his car and drove away; Officer Nebeker fol-
lowed him. Apparently on instructions from Chief
Read, the officer stopped Kerns a few minutes later.
The record is quite vague as to when this happened;
there is one reference to its occurring after 6 p.m., and
another reference to its being a dark night and the
officers' having to use flashlights during the encounter
with Kerns.

After receiving a radio message that Kerns
had been stopped, Chief Read and another officer
promptly went to the scene. There is considerable
conflict in the testimony as to what followed. Chief
Read testified, in essence, that Kerns consented to a
search of his vehicle. Kerns's testimony seems to
amount to a claim that he never intended to consent,
did not consent, and that any of his statements that
the officers interpreted as manifestations of consent
were coerced.

During Chief Read's testimony, Kerns's attorney
asked him to name his informant. The district at-

torney objected, claiming that the informant's identity was privileged. Extensive argument and colloquy followed, and the circuit judge at first reserved a ruling. After hearing all the evidence both sides offered on the motion to suppress, the circuit judge ruled that Chief Read had to answer the question about the informant's identity. Chief Read was recalled to the stand, and again asked to identify his informant. He refused to do so, and was held in contempt. This appeal followed.

Kerns claims Officer Nebeker's supposed reason for stopping him—to give him a "verbal warning" for going 45 m.p.h. in a 35 m.p.h. zone—was a pretext; that there never was probable cause to make a search; and that if there was probable cause the police had sufficient time and opportunity to obtain a warrant. The district attorney, here representing Chief Read, argues there was probable cause for the search and that Kerns consented to the search.

■ The circuit judge has not yet ruled on the motion to suppress. Thus, the questions relating to the validity of the search are not properly before us. Accordingly, we express no view on those questions.

The questions that are here presented relate solely to the order finding Chief Read in contempt. The principal one is: Was it error to overrule the claim of privilege and direct the Chief to name his informant?

■ Based on the authority of *State v. Evans*, 1 Or App 489, 463 P2d 378, Sup Ct *review denied* (1970), it was error. In *Evans*, we reviewed United States Supreme Court and Oregon Supreme Court decisions and concluded that the state is not required to disclose the identity of an informant when any informa-

tion the informant might possess would go only to a probable cause issue and would have no bearing on the question of guilt or innocence. Such are the facts of this case. The informant was not present when Kerns was arrested on the charge of possession of marihuana. Whatever testimony the informant might be able to give concerning the search would relate only to the probable cause question. Under *Evans,* the claim of privilege made in this case should have been sustained, and Chief Read should not have been directed to reveal the name of his informant.[①]

Of course, in evaluating the evidence developed at the suppression hearing, the circuit judge is free to

---

[①] We recognize that our holding in *Evans* that the identity of an informant should never be disclosed when only relevant to probable cause may be contrary to the majority of cases in other jurisdictions.

"By the weight of authority it is recognized that the privilege of nondisclosure of an informer's identity is subject to exceptions and limitations not only where disclosure is sought in connection with the issue of innocence or guilt, but also where disclosure is sought in connection with an issue as to the legality of an arrest or search without a warrant, and communications by an informer are claimed by the prosecution to establish probable (or reasonable) cause. In the latter situation the question is one of balancing the public interest in law enforcement against the policy of discouraging unreasonable searches and seizures; expressed in more general terms, the policy conflict is between the encouragement of the free flow of information to the officers and the policy of discouraging lawless enforcement of the law.

"The controlling rule is that disclosure of the informer's identity is required in the situation discussed at this point, unless there was sufficient evidence apart from his communication to establish probable (or reasonable) cause." 3 Wharton, Criminal Evidence 768-69, § 795.1. (Anderson 1972 Supp).

*See also,* 8 Wigmore, Evidence 768-69, § 2374 (f) (McNaughton rev 1961); Annotation, 76 ALR2d 262 (1961) (relied upon by the circuit judge in this case). However, because of the somewhat confused nature of the record now before us, we believe this is not the appropriate case for any reconsideration of *Evans.*

conclude that the anonymous informant did not give the information claimed or was not reliable, as claimed.

■ A subsidiary question here presented is: If—as is not here the case—the claim of privilege was not well taken, is contempt the proper sanction to invoke when a witness refuses to name his informant?

We think not. As we said—by implication, at least—in *State v. Fleischman,* 10 Or App 22, 495 P2d 277, Sup Ct *review denied* (1972), the state cannot withhold, under a claim of privilege, evidence material to the defense and still continue the prosecution. Wigmore calls this the Andolschek doctrine, because of its strong expression in *United States v. Andolschek,* 142 F2d 503 (2d Cir 1944). 8 Wigmore, Evidence 815, n 14, § 2379 (McNaughton rev 1961). This doctrine applies to all possible claims of privilege by the state. *Cf., State v. Fleischman,* supra.

Under this view, when, in a criminal trial, the state persists in a claim of privilege that has been overruled by the judge, the state should be given an election: disclose the information, or dismiss the indictment. The state must then balance the advantages and disadvantages of revealing the information, e.g., the informant's identity, and dismissing the prosecution. No specific ritual is required to put this election to the state; a continued refusal to disclose after the trial judge has overruled the privilege claim can be viewed as an expression of the state's decision, and the trial judge can sua sponte dismiss the indictment.

■ The approach thus followed when the state erroneously claims privilege in a criminal trial is different from when an erroneous claim of privilege is made by a witness personally. In the latter situation

contempt is the normal sanction. *See, In re Jennings et al,* 154 Or 482, 59 P2d 702 (1936). But in this case the "informant's privilege" is not a privilege that belongs personally to Chief Read or any other witness; it is the state's privilege to not disclose the identity of persons who furnish information to law enforcement officials. *Roviaro v. United States,* 353 US 53, 59, 77 S Ct 623, 1 L Ed 2d 639 (1957). Because this privilege is the state's, any sanction for its erroneous assertion must be directed to the state, i.e., the prosecution, rather than any individual witness.

The judgment of contempt is reversed, and the case is remanded for further proceedings.