Argued and submitted November 21,
affirmed December 31, 1979

STATE OF OREGON,
*Respondent,*

*v.*

WALT R. DICKENSON,
*Appellant.*

(No. F 15382, CA 14800)

607 P2d 754

J. Bradford Shiley, Portland, argued the cause and submitted the brief for appellant.

Robert C. Cannon, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and W. Benny Won, Assistant Attorney General, Salem.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Defendant appeals from his conviction of unlawful possession of food fish during a closed season, ORS 509.011(2)(a). The sole issue is whether the stop by police of defendant's pickup truck on the basis of a tip by an anonymous informant was proper. We hold that the stop was lawful and affirm.

At the pretrial hearing on defendant's motion to suppress evidence seized as a result of the stop and subsequent search, the state presented the following testimony. Officer Pert of the Oregon State Police, who was assigned to the Fish and Game Division, testified that on June 8, 1978, he received a phone call from an anonymous caller, who told him that defendant, Walt Dickenson, had been illegally taking salmon from the Columbia River each night at Corbett Boat Landing. The officer stated that the caller, when asked, declined to identify himself. At the time, the salmon season was closed on the Columbia River, as was the commercial steelhead season, while the shad season was open. Officer Pert contacted Trooper Carver of the Oregon State Police, and met him at approximately 9:20 p.m. on June 9, 1978, at the Corbett Boat Landing. Trooper Carver was stationed in his vehicle at a viewpoint east of the landing. Officer Pert took a station on the bank near the boat moorage, and was in communication with Trooper Carver by hand radio. Officer Pert saw defendant fishing, but from his position could not determine the type of fish for which defendant was fishing. After defendant's boat came to the dock, with another person on board, a third person drove up in a pickup truck. Defendant and his passenger loaded some fish from the boat into the third person's pickup, and loaded other fish into defendant's pickup truck, which had been parked at the landing. Officer Pert was unable to tell the type of fish being loaded into the trucks. When defendant got into his truck and started to drive away, Officer Pert contacted

Trooper Carver, who stopped the truck. Pert and Carver found two chinook salmon, one steelhead and a number of shad in the truck. At this time, Officer Pert issued defendant a citation.

Trooper Carver testified to essentially the same facts, stating that the police had received "numerous complaints" by anonymous callers concerning defendant's illegal fishing activities. He added that the salmon and steelhead were in "plain view" in the pickup. He also stated that defendant was a commercial fisherman known personally by Officer Pert.

The state argues that the stop was justified under either ORS 131.615(1) or ORS 496.660(1). ORS 131.615(1) provides:

> "A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

"Reasonably suspects" is defined in ORS 131.605(4):

> " 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625."

ORS 496.660(1) provides:

> "Any [game officer] may search any person, and examine any boat, automobile, aircraft, conveyance, vehicle, game bag, game coat or other receptacle for wildlife, or cold storage rooms, warehouses, taverns, boarding houses, restaurants, club rooms, outhouses, saloons, depots, hotels and all other places, except private dwelling houses, wherein wildlife may be kept or sold, and examine all packages and boxes held either for storage or shipment which they have reason to believe contain evidence of violations of the wildlife laws."

Defendant argues that under *State v. Odam*, 40 Or App 551, 595 P2d 1277, *rev allowed* (1979), which interpreted and applied these provisions, the information possessed by the police at the time they stopped

defendant's truck was insufficient to justify the stop. In *State v. Odam,* an officer received information from a confidential, reliable source who reported illegal deer killing on a timber company's property. The deer hunting season was closed, but bear season was open. Based on this information, the officer decided to check the area. After entering the area, the first vehicle he stopped was defendants'. The officer testified that his only basis for stopping the particular vehicle was his intention to stop all vehicles in the area to check for game violations. During the subsequent search the officer found the carcasses of two deer. The court held that the stop was not justified under either ORS 131.615 or 496.660(1), since the information possessed by the officer did not relate to the defendants or their vehicle.

In contrast to *State v. Odam,* here the information possessed by the officers related to defendant and to his truck.

This case is similar to *State v. Lindstrom,*37 Or App 513, 588 P2d 44 (1978). In that case, a man flagged down an officer on patrol and reported that the driver of a yellow Ford pickup truck had been driving recklessly and had nearly forced him off the road. The informant, who declined to give his name, also said that the driver appeared very intoxicated and "had pulled a rifle on him." The informant's car had no license plates from which the officer could record a license plate number. Shortly after his conversation with the informant, and within one-half mile of where it had taken place, the officer saw the described pickup truck proceeding normally and signalled the driver to pull over. The driver, the defendant in the case, appeared intoxicated and was arrested. The court held that the "report of the anonymous informant constituted information of sufficient quantity and quality to give rise to a reasonable suspicion that defendant was committing an offense." 37 Or App at 516. The stop was thus held to be valid under ORS 131.615(1).

The court expressly overruled dictum in *State v. Caproni*, 19 Or App 789, 792 and n. 1, 529 P2d 974 (1974), to the effect that without corroboration, an anonymous tip does not create reasonable suspicion.

We conclude that the stop here was justified based upon the anonymous tip. Further, the trial court made a specific finding of fact that the salmon and steelhead were not covered up, and were thus in plain view as testified by Trooper Carver. This finding is not challenged on appeal. The search following the stop was, therefore, also valid.

Affirmed.